UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EARL SMITH,                          )
                                     )
          Petitioner,                )
                                     )
     vs.                             )          Case No. 4:10CV1155 CDP
                                     )
UNITED STATES OF AMERICA,            )
                                     )
          Respondent.                )

## MEMORANDUM AND ORDER

Movant Earl Smith brings this case under 28 U.S.C. § 2255, seeking to

vacate, set aside, or correct his sentence.  Smith is currently serving a sentence of

97 months following his guilty plea to one count of possession with intent to

distribute between 400 and 500 grams of cocaine, and one count of possession of a

firearm in furtherance of a drug-trafficking crime.  Criminal Case No. 4:08CR158

CDP.  He did not file a direct appeal.

As grounds for his § 2255 motion, Smith alleges that the government

committed prosecutorial misconduct, and that he received ineffective assistance of

counsel.  These claims arise from Smith's recent claim of innocence, and his

assertion that corrupt St. Louis police officers framed him.  The record

affirmatively refutes these claims, however, so I will deny his motion without a hearing.

## Background

In October of 2007, Detective Jeffrey Seerey, a detective with the North County Municipal Enforcement Group in St. Louis, Missouri, received information from a reliable confidential informant that Earl Smith was selling cocaine and cocaine base out of Smith's residence. Based upon this information, Detective Seerey performed a background check on Smith, which revealed numerous prior felony arrests, including arrests for the distribution and possession of a controlled substance and for second-degree drug trafficking. Detective Seerey also received information from St. Louis City Detectives Bobby Garrett and Vincent Carr, then assigned to the St. Louis City Crime Suppression Unit, that Smith was selling cocaine and cocaine base.[1]

On October 17, 2007, Detective Seerey swore to this information in an application for a search warrant filed in the Circuit Court of St. Louis County.

---

[1] On December 11, 2008, Garrett and Carr were both indicted in the United States District Court for the Eastern District of Missouri on charges of, *inter alia*, embezzlement, false statements, and misapplication of government funds, after a government investigation revealed that the men had planted evidence on innocent persons and had stolen drugs, money, and firearms from others. Criminal Case No. 4:08CR703 ERW. Smith was not one of the victims in that case, however. Both Garrett and Carr eventually pleaded guilty. Carr served twelve months and one day in federal prison, and Garrett is still serving his 28-month sentence.

The Honorable Gary Gaertner issued the warrant that same day, granting detectives permission to search Smith's residence. Officers with the North County and St. Louis police departments, including detectives Seerey, Garrett, and Carr, together with agents from the Drug Enforcement Agency, set up surveillance of Smith's residence that evening.

At around 6:30 p.m., Smith exited his residence, and officers identified themselves and ordered Smith to place his hands in the air and lay on the ground. Smith refused, fleeing back into his residence and throwing a plastic bag of cocaine base towards the entertainment center in his living room. He was eventually apprehended. Officers, assisted by a drug-detecting K9, searched Smith's residence and found marijuana, cocaine, cocaine base, a digital scale, three handguns, and a large amount of U.S. currency. These items were seized and sent for processing, and Smith was arrested. Forensic examination later revealed that the officers had seized 801.09 grams of marijuana, 468.7 grams of cocaine, and 14.4 grams of cocaine base.

On February 28, 2008, a five-count indictment was returned. Count One charged Smith with being a convicted felon in possession of three firearms, in violation of 18 U.S.C. § 922(g)(1). Count Two charged Smith with possessing with intent to distribute more than five grams of cocaine base, in violation of 21

U.S.C. § 841(a)(1). In Count Three, Smith was charged with possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and in Count Four, he was charged with possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). Finally, Count Five charged Smith with knowingly possessing firearms in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1).

Smith retained N. Scott Rosenblum, Adam Fein, and Ellen Ribaudo as counsel and was released on bond on March 20, 2008. He also entered a plea of not guilty on that same date. On April 4, 2008, Smith filed a waiver of pretrial motions, stating that there were no issues that he wished to raise, that his counsel had personally discussed the matter with him, and that he agreed in the decision not to file pretrial motions. The Honorable Mary Ann L. Medler held a hearing on April 10 to consider Smith's waiver. Smith, through counsel, submitted a memorandum indicating that counsel for Smith had determined it was in his best interest not to file pretrial motions, counsel had discussed the matter with Smith, and Smith agreed it was in his best interest not to file pretrial motions. After reviewing this decision with Smith in open court, Judge Medler concluded that Smith's waiver of his right to file pretrial motions was knowingly and voluntarily made.

On July 25, 2008, Smith appeared before me and, pursuant to a plea agreement, pleaded guilty to Counts Three and Five of the indictment. In the plea agreement, Smith acknowledged he was guilty of the crimes to which he was pleading guilty and stipulated to the facts of his arrest, including his possession of cocaine and firearms in furtherance of a drug-trafficking crime. In exchange for Smith's plea, the government agreed to move to dismiss Counts One, Two, and Four at the time of sentencing. The government also agreed not to file a criminal information pursuant to 21 U.S.C. § 851(a), which could have subjected Smith to increased punishment because of his prior felony drug convictions. Smith agreed to waive his rights to appeal all non-jurisdictional issues, including issues relating to pretrial motions, and all sentencing issues. He also waived his right to file post-conviction motions, including § 2255 motions, except for claims of ineffective assistance of counsel and prosecutorial misconduct. Both sides agreed not to seek a non-guidelines sentence, except for reasons set out in the plea agreement.

Smith stated in the plea agreement that he was fully satisfied with defense counsel's representation; that he had reviewed the government's evidence and discussed its case and all possible defenses and witnesses with counsel; and that counsel had completely and satisfactorily explored all areas that Smith requested relative to the government's case and any defenses. Finally, Smith indicated that

no person had threatened or coerced him to plead guilty, and that he was voluntarily entering the plea because he was guilty of the crimes charged in Counts Three and Five.

I reviewed Smith's plea agreement, including his admission of guilt to Counts Three and Five and his waiver of appeal, with Smith on the record during his plea colloquy. Smith was placed under oath, and, in response to my questioning, he assured me that he was satisfied with counsel's representation, that he was in fact guilty, and that no one had threatened or forced him to plead guilty. Based on these statements, I accepted Smith's plea.

A presentence investigation report (PSR) was then prepared. The PSR determined that the Total Offense Level for Count Three was 24, minus three levels for Smith's acceptance of responsibility, resulting in a Total Offense Level of 21. Smith had a criminal history category of I, so the advisory sentencing guidelines range for Count Three became 37-46 months. For Count Five, the guideline sentence was the minimum term of imprisonment required by the statute, 18 U.S.C. § 924(c)(1)(A), which was imprisonment of five years consecutive to any other sentence.

On October 17, 2008, I sentenced Smith to a total of 97 months imprisonment, equal to the lowest end of the advisory sentencing guideline ranges

for Counts Three and Five. Smith did not appeal. On June 28, 2010, over one year after his sentencing, Smith filed this § 2255 motion. He also filed an amended, 86-page motion on July 16 raising largely the same claims and arguing that his motion was timely. Smith now asserts that he is actually innocent of the crimes to which he pleaded guilty, and that he was framed by disgraced Detectives Garrett and Carr, who allegedly planted the drugs and guns in Smith's residence. He also claims that their testimony was the only evidence of his guilt. Based on this new claim of innocence, Smith raises the following specific grounds:

1. The government committed prosecutorial misconduct by knowingly framing an innocent man and by withholding exculpatory evidence that Smith was innocent and had been framed by Garrett and Carr.

2. Counsel was ineffective in several respects: by failing to move to dismiss the indictment; by failing to move to suppress evidence recovered during the search of his house; by failing to move to compel the government to provide him with exculpatory evidence about Garrett's and Carr's corruption; and by advising him to plead guilty. Smith also claims he suffers from post-traumatic stress disorder and severe mental disorders after witnessing his father's accidental death in the 1970s, and counsel was ineffective for failing to file for a downward departure because of Smith's diminished mental capacity.

<u>**Discussion**</u>

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and files and the records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks and citation omitted). However, no hearing is required when the claim is inadequate on its face, or if the record affirmatively refutes the assertions upon which it is based. *Id.* In this case, Smith's claims are affirmatively refuted by the record and files before me, so I conclude that no hearing is required.

## I.     <u>The Motion is Untimely</u>

28 U.S.C. § 2255(f) provides a one-year statute of limitations for motions under that section. Within the Eighth Circuit, the statute of limitations begins to run ten days after the entry of a petitioner's criminal judgment, or the date on which the ten-day period for filing a notice of appeal is expired. *See Murray v. United States*, 313 Fed. Appx. 924, 925 (8th Cir. 2009) (citing Fed. R. App. P. 4(b)(1)(a), 26(a)(2)); *see also Anjulo-Lopez*, 541 F.3d at 816 n.2 (if a defendant does not file a notice of appeal, a conviction becomes final upon expiration of the period for filing a notice of appeal).

This one-year statute of limitations can be equitably tolled "under limited circumstances," however, including when "extraordinary circumstances beyond a prisoner's control prevent the timely filing." *See Murray*, 313 Fed. Appx. at 925 (internal quotation marks and citation omitted); *see also United States v. Martin*, 408 F.3d 1089, 1092 (8th Cir. 2005) (equitable tolling applies to § 2255 motions). But the Eighth Circuit has cautioned that courts should use equitable procedures infrequently or not at all if the petitioner has not diligently pursued his rights. *See, e.g., Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007); *Flanders v. Graves*, 299 F.3d 974, 976 (8th Cir. 2002).

As stated above, Smith was sentenced on October 17, 2008. He did not file an appeal. Because his § 2255 motion was filed on June 28, 2010, well over a year after his conviction was final, it is barred by the statute of limitations unless the statute can be equitably tolled. In his amended motion, Smith argues the statute should be tolled because, he claims, he actually sent his motion on October 27, 2009, and because he only discovered that Garrett had pleaded guilty on August 28, 2009. Neither of these claims has any merit. First, Smith submits absolutely no evidence that he sent his § 2255 motion in October of 2009. There is no date stamp or any other indication on any envelope or document in the record suggesting that the motion was sent any earlier than June of 2010. Smith's

amended memorandum in support of his motion does include the typewritten date, October 27, 2009, but this amended motion was docketed on July 16, 2010, and the envelope in which it was sent bears a stamped date of July 13, 2010. Given the lack of any evidence supporting Smith's allegations that he actually sent his motion in October of 2009, and that it, for reasons unknown, was delayed by eight months in arriving at the Court, I must reject his claim that he actually mailed it on time. *See, e.g., United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993) (in considering § 2255 motions, a court must take many of the movant's factual averments as true, but need not give weight to conclusory allegations, self-interested characterizations, or discredited inventions).

Moreover, Smith's claim that he only discovered Garrett's plea in August of 2009 is not a basis to equitably toll the statute. Smith's other allegations in his motion suggest that he knew about Garrett's and Carr's corruption and discussed it with his counsel before he decided to plead guilty: "At his first meeting with counsel, the defendant's counsel informed the defendant that the two crooked cops who had caused the defendant's arrest were under investigation by police authorities for their crimes." Rather than supporting his new allegation that he only discovered Garrett's corruption in August of 2009, these allegations indicate that Smith was aware of it well in advance of his decision to plead guilty. Given

Smith's knowledge of the investigation into Garrett's and Carr's corruption in the fall of 2008, Smith's discovery of Garrett's plea in August of 2009 does not provide basis for me to equitably toll the statute. *See Murray*, 313 Fed. Appx. at 925 ( statute may be tolled when "extraordinary circumstances beyond a prisoner's control prevent the timely filing . . . . ") (internal quotation marks and citation omitted). Because the record affirmatively refutes Smith's claims that he mailed his motion in October of 2009, or that the statute should be equitably tolled, his motion is untimely and subject to dismissal.

## II.  Even if the Motion Were Timely, It Fails on the Merits

Even if Smith's motion were not time barred, his claims still fail on the merits. Smith entered a knowing and voluntary plea of guilty to Counts Three and Five of the indictment. At the plea colloquy, Smith stated before me under oath that he had possessed more than 400 grams of cocaine with the intent to distribute it, and had possessed firearms in furtherance of his drug-trafficking crime, as charged in the indictment. Although he now makes conclusory claims to the contrary, Smith submits no evidence to support those claims, and the record before me affirmatively refutes them.

## A.    Prosecutorial Misconduct

Smith first claims that the government committed prosecutorial misconduct by "knowingly fram[ing] an innocent man" and by failing to provide him with exculpatory evidence about Garrett and Carr.  He also asserts that the only evidence of his guilt was the false testimony of Garrett and Carr.  These claims are affirmatively refuted by the record.

To begin with, the record conclusively rebuts Smith's claims that the indictment against him came only as a result of Garrett's and Carr's alleged false testimony.  Instead, Carr and Garrett played only a small role in Smith's arrest and the search of his home, and there were several other police officers with unblemished records involved in the arrest and search.  In opposition to Smith's motion, the government presented the search warrant and warrant application from Missouri state court.  Although this warrant application reveals that Detective Seerey had received some information from then-Detectives Carr and Garrett that Smith was selling drugs from his residence, it also reveals that Detective Seerey had received similar information from his own confidential informant.  In the application, Detective Seerey also averred that he had performed a brief background check of Smith, which revealed that Smith had several prior felony arrests, including for distribution of a controlled substance and second-degree

drug trafficking.  After reviewing the application and Detective Seerey's affidavit,

Judge Gaertner found that there was probable cause to search Smith's home and

issued the warrant.

Similarly, several officers and DEA agents were involved in the search of

Smith's home and seizure of drugs and firearms, and, although Carr and Garrett

were present during the search and seizure, there is no evidence that they were

involved in Smith's arrest or the seizure of any evidence.  A DEA Report of

Investigation from the search indicates that several members of the North County

MEG unit, assisted by Garrett and Carr, established surveillance of Smith's

residence soon after Detective Seerey received the warrant to search it.  Once

Smith was spotted, officers detained him and searched his residence.  A

Hazelwood Police Department K-9 Unit assisted with the search.  Officers first

recovered a small bag containing crack cocaine near Smith's entertainment center,

which Smith had thrown when he was first apprehended.  Cellophane baggies of

marijuana and cocaine were also found in Smith's kitchen, along with a digital

scale.  Inside a dog food bag, officers found a large baggie of marijuana.  They

also found three handguns inside a black plastic bag in a closet.

This evidence refutes Smith's claims that his arrest and the government's

prosecution were the result of Carr's and Garrett's solitary efforts.  Although Carr

and Garrett provided some evidence in support of the warrant and assistance during the search and seizure, their involvement was minimal at best. Detective Seerey, rather than Carr and Garrett, applied for the warrant to search Smith's home. Additionally, several officers and agents from several agencies, including the North County police, the DEA, and the Hazelwood Police Department were involved in the search and seizure of evidence from Smith's home. Smith does not claim or adduce any evidence that any of these officers were corrupt or planted evidence in his home. This evidence also fails to support his claims that he is actually innocent, or that the government failed to disclose any exculpatory evidence about Garrett and Carr to Smith.

Nothing in the record indicates that there was anything unlawful about Smith's arrest or seizure, or that the government had any evidence of Garrett's or Carr's specific misconduct in Smith's case. Additionally, as discussed above, both Smith and his counsel were aware in the fall of 2008 and before Smith's guilty plea that Garrett and Carr were being investigated for misconduct in the searches and arrests of other criminal defendants. Accordingly, his claim of prosecutorial misconduct fails. *See English v. United States*, 998 F.2d 609, 612 (8th Cir. 1993) (affirming denial of § 2255 motion even when one of the arresting officers later pleaded guilty to felony falsification of public documents in an

unrelated case, when that disgraced officer's testimony "was cumulative with the testimony of the other officers.").

Most importantly, Smith's recent claims of innocence are a complete contradiction of the statements in his plea agreement and his sworn testimony before me at his plea colloquy. In his agreement, Smith stipulated to the facts of his arrest, including that he knowingly possessed with intent to distribute cocaine, and that he knowingly possessed one or more firearms in furtherance of a drug-trafficking crime. He also stipulated that agents had found cocaine and firearms during their search of his home, and that these items belonged to him. Finally, he agreed that he voluntarily entered his plea of guilty because he was in fact guilty of the crimes charged in Counts Three and Five. Smith signed the agreement, and at the guilty plea hearing, after being placed under oath, Smith acknowledged that he had signed the agreement; that everything in the agreement was true; and that he was, in fact, guilty of the crimes. Smith had many opportunities to proclaim his innocence, but he never did so. Instead, repeatedly and under oath, he admitted that he was guilty of the crimes charged in Counts Three and Five. His current arguments are essentially an argument to me that he was lying under oath at his plea.

"While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier to any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (internal citations omitted); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Smith's repeated admissions of guilt in both his plea agreement and during his plea colloquy present a formidable barrier, and nothing in his current motion or brief has overcome the obstacle of his own sworn admissions at the guilty plea. In sum, given the lack of any evidence supporting Smith's claims of prosecutorial misconduct, together with his own sworn admission of guilt, I must deny this claim.

## B. Ineffective Assistance of Counsel

Related to his claim of innocence, Smith claims that his counsel provided him ineffective assistance by failing to move to dismiss the indictment, failing to move to suppress evidence, failing to get exculpatory evidence from the government, and convincing him to plead guilty.[2] He also claims that he suffers

---

[2]On page 28 of his 50-page memorandum in support of his § 2255 motion, Smith also claims that "Counsel failed to file a requested appeal," and failed to file a habeas motion on his behalf. Although counsel's failure to file a requested appeal would normally entitle a petitioner to a hearing on his ineffective assistance claim, I will not hold a hearing on this allegation. Aside from the fact that Smith's motion is subject to dismissal for being untimely, Smith's claim – a

from diminished mental capacity, and so counsel was ineffective for failing to move for a downward departure at sentencing. None of these claims has merit.

The Sixth Amendment establishes the right to the effective assistance of counsel in a criminal case. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order for a convicted defendant to prove that his counsel was ineffective, he must first show that counsel's performance was deficient and fell below an objective standard of reasonableness. *Id.* at 687-88. The showing of deficiency requires that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, a defendant must show prejudice, which is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). To show ineffective assistance of counsel in the context of a guilty plea, a movant must show that but for counsel's errors, the defendant would not have pleaded guilty but would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985).

---

one-sentence allegation, buried in the middle of his memorandum in support of his motion – is not sufficiently raised or developed to entitle him to a hearing.

In this case, Smith's claims of ineffective counsel are premised on his claims that he is innocent of the crimes to which he pleaded guilty and that he was framed by Garrett and Carr.  However, as discussed above, there is no evidence to support those claims, and they are affirmatively refuted by the record.  Moreover, there is nothing in the record to suggest that defense counsel did anything less than zealously represent Smith.  The record reveals that counsel successfully moved to have Smith released on bond soon after he was arrested.  Counsel also negotiated a favorable plea bargain with the government in which the government agreed to dismiss Counts One, Two, and Four from the indictment, and not to file any criminal information pursuant to 21 U.S.C. § 851(a), which could have raised the mandatory minimum to twenty years because of Smith's prior felony drug conviction.  Smith also stated in his plea agreement and again before me under oath that he was fully satisfied with counsel, that counsel had reviewed all evidence and possible defenses with him, and that counsel had completely explored all areas that Smith requested him to explore.  Smith's unsupported accusations aside, there is nothing in the record to suggest that counsel provided anything less than an effective defense for Smith.

In his motion and memoranda, however, Smith claims that counsel should have filed motions to dismiss the indictment, to suppress evidence, and to get

exculpatory evidence from the government.  He claims that he did not know then that Carr and Garrett were corrupt, but that counsel knew and should have filed these motions based on that knowledge.  This is simply untrue – as discussed above, both Smith and his counsel were aware before Smith decided to plead guilty that Carr and Garrett were being investigated for making false statements, planting evidence, and stealing from innocent persons.   Moreover, there is absolutely no evidence of any corruption or planting of evidence by any officer involved in the search and seizure of evidence from Smith's home.  Counsel is under no obligation to make frivolous or meritless arguments, and there is no evidence – aside from Smith's unsupported accusations that he is innocent and was framed by Carr and Garrett – to suggest that any motion to dismiss the indictment, to suppress evidence, or to get discovery from the government would have been successful or would have produced any exculpatory evidence.  *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (as a matter of law, counsel cannot be ineffective for failing to raise a meritless argument).

Additionally, the record also reveals that, upon the advice of counsel, Smith decided that it was not in his best interests to file pretrial motions, that Judge Medler went over that decision with Smith in open court, and that Judge Medler concluded that Smith's choice was knowingly and voluntarily made.  Thus, aside

from the fact that any such motion would have been unsuccessful, Smith clearly and voluntarily waived the right to file such motions. Nothing in his current motion or memoranda suggests that decision was not knowingly made, and I will not entertain his conclusory allegations to the contrary.

Similarly, Smith's claim that counsel erred by convincing him to plead guilty is belied by the record. Smith admitted his guilt to Counts Three and Five in his signed plea agreement and again under oath, so his recent and unsupported claims of innocence are entitled to no weight. Additionally, Smith stated in his plea agreement that he was entering his plea voluntarily, and that no one had coerced him into pleading guilty. I went over these statements again with Smith during the plea colloquy, and he swore that they were true. As with his claim of innocence, Smith's sworn testimony at the colloquy that he voluntarily decided to plead guilty presents a formidable barrier to his more recent and unsupported claim of counsel's coercion, and nothing in his motion or memoranda overcomes that barrier. *See Nguyen*, 114 F.3d at 703.

Smith's claim that counsel was ineffective for failing to move for a downward departure based on Smith's alleged post-traumatic stress disorder also fails. Although the death of Smith's father in the 1970s would understandably have a distressing effect on him, there is absolutely no evidence to support his

claim that he suffered from post-traumatic disorder or was so mentally diminished at the time of his crime, plea, or sentencing that he would have been entitled to a downward departure. Smith does not claim that he even informed counsel of his condition, but instead claims that counsel should have known about it and investigated it. But counsel is under no duty to investigate a claim that Smith failed to even discuss with counsel, and, as discussed above, Smith swore before me at his plea colloquy that he had discussed all possible defenses with counsel and was satisfied with counsel's performance. I concluded at the plea that Smith was competent, and neither Smith nor anyone else raised any questions about this. More importantly, however, there is simply no evidence that Smith had any mental incapacities at any time. He presents no records of treatment, and the PSR indicates that Smith reported no history of mental or emotional problems or treatment. Smith reported none to me at his plea colloquy or at sentencing when I discussed his personal history with him. Thus, there is nothing to suggest that any motion for downward departure would have been successful if attempted. Because there is no evidence of any ineffective assistance by counsel, I must deny this claim.

Finally, Smith moves for summary judgment on his motions, contending the government's response to his motions was untimely. This is untrue; I previously

entered two Orders giving the government until November 29, 2010 to file its response. The government properly filed its response on November 29, 2010, and so Smith's motion for summary judgment is meritless and must fail. Moreover, even if the government had filed a untimely response, I would have had discretion to consider it, and an untimely response does not mean that Smith is entitled to relief on meritless claims.

### III.   Certificate of Appealability

Because Smith has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flinger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that the motion and amended motion of Earl Smith to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [## 1, 5] are both denied.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability, as Smith has not made a substantial showing of the denial of a federal constitutional right.

**IT IS FURTHER ORDERED** that Smith's motion for summary judgment [#14] is denied.

**IT IS FURTHER ORDERED** that all other pending motions are denied as moot.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 6th day of April, 2011.